UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATICIA MILLER,                              Case No. 10-12778

        Plaintiff,                      Bernard A. Friedman
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 12)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On July 14, 2010, plaintiff filed the instant suit seeking judicial review of
the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant
to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Bernard A.
Friedman referred this matter to Magistrate Judge Virginia M. Morgan for the
purpose of reviewing the Commissioner's decision denying plaintiff's claim for a
period of disability, disability insurance, and supplemental security income
benefits.  (Dkt. 3).  On March 11, 2011, this matter was reassigned to the
undersigned.  (Dkt. 13).  This matter is before the Court on cross-motions for
summary judgment.  (Dkt. 10, 12).

B.    Administrative Proceedings

Plaintiff filed the instant claims on April 11, 2005, alleging that she became unable to work on December 22, 2000.  (Dkt. 7, Tr. at 68).  She subsequently amended her onset date to October 16, 2003.  (Dkt. 7, Tr. at 12).  The claim was initially disapproved by the Commissioner on October 20, 2005.  (Dkt. 7, Tr. at 50-52).  Plaintiff requested a hearing and on September 18, 2007, plaintiff appeared with counsel before Administrative Law Judge (ALJ) James N. Gramenos, who considered the case *de novo*.  In a decision dated November 28, 2007, the ALJ found that plaintiff was not disabled.  (Dkt. 7, Tr. at 9-29).  Plaintiff requested a review of this decision on December 26, 2007.  (Dkt. 7, Tr. at 6-8). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on June 11, 2010, denied plaintiff's request for review.  (Dkt. 7, Tr. at 3-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

A.    ALJ Findings

Plaintiff was 54 years of age at the time of the most recent administrative

hearing.  (Dkt. 7, Tr. at 68).  Plaintiff's relevant work history included approximately six years as a cashier/food handler, dietary aid, nurse assistant, and a laser beam machine operator.  (Dkt. 7, Tr. at 81).  In denying plaintiff's claims, defendant Commissioner considered obesity, history of lumbar meningocele with ongoing back pain, anxiety, and depression as possible bases of disability.  (Dkt. 7, Tr. 17).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since October 16, 2003.  (Dkt. 7, Tr. at 16).  At step two, the ALJ found that plaintiff's obesity, history of lumbar meningocele with ongoing low back pain, anxiety and depression were  "severe" within the meaning of the second sequential step.  (Dkt. 7, Tr. at 17).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id.*  At step four, the ALJ found that plaintiff could not perform her previous work as laser beam machine operator, or nurse's assistant.  (Dkt. 7, Tr. at 24).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 7, Tr. at 25).

On July 23, 2003, an earlier hearing was held before ALJ Lovert Bassett, who issued an unfavorable decision dated October 10, 2003.  (Tr. 13).  ALJ Bassett found that plaintiff was limited to unskilled sedentary work.  ALJ

Gramenos concluded that plaintiff's conditions had worsened, and that her work activity was more restricted, but that she was still able to perform a limited range of sedentary work.[1]  (Tr. 19).

    B.    <u>Plaintiff's Claims of Error</u>

According to plaintiff, the medical evidence shows that she has a severe impairment which meets or equals listing 1.04.  Specifically, plaintiff argues that there is evidence of nerve root compression as she has radiating pain with numbness and tingling in her legs (Tr. 111), limited motion of her spine (Tr. 115, 223), weakness in her legs and they often give out on her (Tr. 221), and a positive straight leg raising test.  (Tr. 125).

---

[1]  "I find from the totality of the credible evidence that claimant has the 'residual functional capacity' (1) to lift and/or carry weights occasionally and frequently, during the working period, up to five pounds of weight; (2) standing and/or walking abilities in the work place, assuming normal periods of breaks, for a total of up to at least two hours during a normal eight hour work period; (3) with Sitting for periods of time upwards of six hours when performing work activity; (4) not requiring frequent periods of bending from the waist or knees; (5) not involving extremes of cold, heat, wetness and/or humidity; (6) can communicate in the English language and has the basic mental abilities' to understand, carry out and remember simple unskilled work instructions; (7) has the mental functional ability to respond appropriately to supervision when performing unskilled work activity; (8) has the mental functional abilities to respond appropriately to usual work situations and with co-workers when performing unskilled work activity; (9) has the mental functional abilities in dealing with changes in a routine unskilled work setting; and (10) eliminate situations in the work setting of hazards from unprotected areas of moving machinery, heights, ramps; ladders, scaffolding, and on the ground level unprotected regions of holes and pits." (Tr. 19).

Plaintiff also argues that the ALJ failed to properly evaluate her pain complaints in the context of the Listing.  According to plaintiff, she meets the two steps of the *Duncan* test.  First, there is objective medical evidence of an underlying medical condition, in this case, her lumbar meningocele, which is believed to be causing her pain.  Claimant also meets the second step of the *Duncan* test in that she suffers from back spasms, trouble walking due to radiculopathy, atrophy which causes her legs to go out on her, and limited motion in her spine, which should have indicated to the ALJ that her condition causes the pain in question.

Even if she did not satisfy the *Duncan* test, the ALJ should have considered the several other factors laid out in 20 C.F.R. § 404.1529(c)(3).  Plaintiff's daily activities are impacted by her pain, as she was noted to have worsening ability to do household chores (Tr. 125), difficulty driving or sitting for long, and has pain doing her hair.  (Tr. 128).  Plaintiff also stated that she relies on her children, chore provider, and family members to do activities such as cooking and cleaning. (Tr. 367).  The location of her pain is in her low back and radiates into her shoulders and legs.  Plaintiff also noted that cold weather makes her conditions worse.  (Tr. 133).  As to her medications, plaintiff has been taking vicodin, flexeril (Tr. 299), Lyrica (Tr. 300), and has received Depo-Medrol and Toradol injections. (Tr. 318).  Even with these medications, she is in constant pain. Plaintiff testified

that the drugs make her drowsy and she spends a lot of her day sleeping.  (Tr. 363, 367).  Plaintiff has tried using a back brace when she walks a lot (Tr. 370) and uses pillows etc. to get comfortable when she sleeps, even though she usually wakes up every hour or so with muscle spasms or pain.  (Tr. 368).  She also spends a portion of her day in the recliner as that keeps her more comfortable.  (Tr. 361). This evidence shows, according to plaintiff that she has a severe condition and underlying pain which cause her to be disabled.

Plaintiff also argues that the ALJ should have concluded that she satisfied Listing 12.04 or 12.06.  According to plaintiff, the ALJ did not properly weigh the information given in the record concerning plaintiff's depression. Plaintiff was noted to be depressed throughout the record as her testimony and objective medical evidence show.  Plaintiff reports she has symptoms of crying a lot, keeping to herself, passivity, low self esteem, suicidal ideation (Tr. 232-33), decreased energy, hopelessness, and trouble sleeping.  (Tr. 235, 281).  Thus, plaintiff argues that her impairments meet the requirements of 12.04 because she has at least four of the criteria as required by 12.04(A): Anhedonia, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and suicidal thoughts.  In addition, she testified that her depression is due to the fact that she cannot work and she is in constant pain.  (Tr. 345).  According to plaintiff, she also meets the B criteria, as she has marked restriction of her activities of daily

living.  She is unable to comb her hair and shower as often due to physical

limitations, and she relies on her children, chore provider and family to take care

of her cooking and cleaning.  She also has marked restrictions with her ability to

concentrate and keep pace as she is often drowsy due to her medications and has at

least moderate difficulty in this area as noted in her psychiatric evaluation.  (Tr.

253, 363).  And, plaintiff has difficulty maintaining social activities due to the fact

that often isolates herself.  Plaintiff has been diagnosed multiple times throughout

the record with anxiety and post traumatic stress disorder.  (Tr. 233, 238, 272-78).

When asked why she was diagnosed with anxiety by the ALJ, plaintiff responded

it was due to sexual abuse she received as a child.  (Tr. 347).  Thus, according to

plaintiff, her impairments meet the requirements of 12.06.  She meets the

requirements of 12.06(A) as she has been diagnosed with post traumatic stress

disorder.  She further meets the B criteria as she has marked difficulties with her

activities of daily living, being able to concentrate and keep pace, and difficulty

maintaining social activities, as mentioned above in regards to her depression.

   In the hypothetical/residual functional capacity posed to the VE, the ALJ

made no mention of plaintiff's inability to maintain attention and concentration for

extended periods, to perform activities within a schedule, maintain regular

attendance, and be punctual within customary tolerances, to complete a normal

workday and workweek without interruptions from psychologically based

symptoms and to perform at a consistent pace with an unreasonable number and length of rest periods, nor did he include any mention of how plaintiff's pain issues would affect her ability to engage in Substantial Gainful Activity. (Tr. 267-68). The hypothetical was also significantly flawed because the ALJ did not include plaintiff's pain limitations. Plaintiff's pain is reported as more than moderate as noted in the record and would cause more limitations than noted by the ALJ, therefore the hypotheticals/residual functional capacity did not portray a fair and accurate summary nor did it appear to incorporate plaintiff's disabilities.

Lastly, plaintiff submitted records to the Appeals Council for review, which are also submitted in support of her request for a sentence six remand. The evidence presented to the Appeals Council came to light after the administrative hearing of September 18, 2007, therefore it was not available at the time of the hearing. According to plaintiff, this evidence satisfies the "new" requirement of the evidence. Plaintiff asserts that, if the proposed evidence was presented at the administrative hearing, it is reasonable the ALJ would have reached a different result. This is so because the new evidence as presented shows an ongoing disability with plaintiff's back, lower extremity weakness, and depression. Plaintiff asserts that she has established good cause as the records are a result of continued medical treatment and a requirement of the State of Michigan Department of Health and Human Services. When these records became available,

plaintiff supplied her representative with the evidence and then it was supplied to the Appeals Council.

C.   Commissioner's Motion for Summary Judgment

While plaintiff cites a report discussing an MRI of her lumbar spine, which apparently revealed an intrasacral meningocele13 (Tr. 107), according to the Commissioner, plaintiff does not cite any actual imaging test results documenting a condition resulting in nerve root compression or spinal cord compression. The MRI of the lumbar spine done on November 29, 2001, showed "no evidence of bulging disc, disc herniation, nerve impingement or spinal stenosis." (Tr. 198). There was "no tethering of the spinal cord." (Tr. 198). The MRI of plaintiff's cervical spine done on April 3, 2002, showed "no focal disc herniation or spinal/NRC stenosis." (Tr. 196). In addition, "[t]he spinal cord also appears normal." (Tr. 196). Thus, according to the Commissioner, plaintiff has not satisfied the basic diagnostic criteria of Listing 1.04.

Even if Plaintiff could establish the requisite nerve root compression or spinal cord compression, the record does not document nerve root compression characterized by neuroanatomic distribution of pain. In particular, no physician of record has correlated pain in plaintiff's extremities or other body parts to damage to specific vertebrae. Further, according to the Commissioner, the record does not establish limitation of motion of the spine, motor loss (atrophy with associated

muscle weakness or muscle weakness), accompanied by sensory or reflex loss, and positive straight-leg-raise testing. Although plaintiff cites a report indicating that she complained of "low back pain radiating into the legs" (Tr. 111), the physical examination done that day by Julian T. Hoff, M.D., indicated that plaintiff "does not have back tenderness." (Tr. 112). In fact, Dr. Hoff reported that plaintiff's "neurological exam is entirely normal." (Tr. 112). While she had some "stiffness in her back on forward bending," she was able to "do it to about 65 degrees." (Tr. 112). Dr. Hoff also reported that "[s]ensation to pin and touch in the upper and lower extremities is normal." (Tr. 112). He further reported that plaintiff "has normal reflexes in the upper and lower extremities." (Tr. 112). Dr. Hoff noted "some mild plantar flexion weakness on the right," he stated that muscle bulk was "normal." (Tr. 112). Lastly, Dr. Hoff reported that "straight leg raising is negative bilaterally." (Tr. 112). Thus, according to the Commissioner, Listing 1.04A cannot be met.

The ALJ found at step two of the sequential evaluation that plaintiff had "anxiety and depression." (Tr. 17). According to the Commissioner, the ALJ appropriately evaluated plaintiff's impairments under Listings 12.04 and 12.06. Both Listings require medically documented findings of the appropriate impairment set forth in Paragraph A, resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 3. Marked difficulties in

Cross-Motions for Summary Judgment
*Miller v. Comm'r*; Case No. 10-12778

maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration.  The required level of severity for the disorders identified in Listings 12.04 and 12.06 are met when the requirements in both Paragraph A and Paragraph B are satisfied.

As the ALJ discussed in his decision, plaintiff is unable to satisfy the Paragraph B criteria.  (Tr. 17).  The ALJ found that plaintiff had a mild degree of limitation in the following areas: "Restriction of Activities of Daily Living" and "Difficulties in Maintaining Social Functioning" and a moderate degree of limitation in the area of "Difficulties in Maintaining Concentration, Persistence, or Pace."  Thus, the ALJ determined that plaintiff did not satisfy either Listing because she did not have two marked limitations.  Although plaintiff asserts in her brief that she has "marked trouble with being able to concentrate," she later concedes that she "has at least moderate difficulty in this area as noted in her psychiatric evaluation (Tr. 253, 256)."  And, based on his review of the record, the ALJ determined that "the objective evidence demonstrates claimant's activities of daily living are mildly restricted." (Tr. 112).  As the ALJ observed, "[e]vidence in the record data includes the fact claimant is the sole provider of assistance to her children."  (Tr. 17), as she testified that she lived alone with them.  (Tr. 354).  The ALJ noted that plaintiff was responsible for "getting the children ready for school classes. Claimant does transport her son to and from school, and at times shares

transportation activity for the trip to and from school by 'car-pooling' with a neighbor." (Tr. 17, citing, Tr. 356-60). The ALJ also noted that plaintiff "testified that she cares for her own hygiene and basic needs." (Tr. 17, citing, Tr. 358). Plaintiff told Terrance Mills, Ph.D., a psychologist who evaluated her at the request of the State Agency, that she was "able to independently care for her hygiene and grooming needs" and that she was able to "independently manage her financial matters." (Tr. 240). He noted that plaintiff "does engage in tasks that include cooking an[d] laundry stating that she does receive some assistance for these tasks from her children." (Tr. 17 citing Tr. 364, 366-67). Further, Daniel Blake, Ph.D., a State Agency reviewing psychologist, who evaluated the evidence of record, opined that plaintiff had only "mild" limitations in "Restriction of Activities of Daily Living." (Tr. 253). Thus, the ALJ reasonably concluded that "marked" difficulties were not supported by the record. The ALJ further found that plaintiff had only "moderate" difficulties in maintaining concentration, persistence, and pace. (Tr. 18). As the ALJ observed during the hearing, plaintiff "responded appropriately to the many questions direct[ed] to her by claimant's representative...in addition to providing answer to questions directed to her by a DDS/SSA consultative examiner." (Tr. 18). Specifically, the ALJ noted that plaintiff told Dr. Mills that she did not have any significant memory impairment. (Tr. 18 citing Tr. 240). Dr. Mills indicated that plaintiff "was able to repeat six

numbers forward and four backward" and "all of the items were recalled three minutes later." (Tr. 241). In addition, the ALJ noted that Dr. Blake opined that plaintiff had only moderate limitations in the ability to maintain attention and concentration for extended periods. (Tr. 18 citing Tr. 267; *see also* Tr. 253). Based on this evidence, the Commissioner asserts that the ALJ reasonably concluded that marked difficulties were not supported by the record. (Tr. 17). Thus, plaintiff is unable to satisfy the Paragraph B criteria of Listings 12.04 and 12.06.

The Commissioner also maintains, in evaluating plaintiff's ability to perform work, the ALJ properly considered the objective medical evidence, including the medical source opinions of record. The ALJ observed that "MRI of the cervical spines as of 04/03/02 was normal and the two sets of MRI of the LS spines in 2001 and again in 07/2005 were normal." (Tr. 21 citing Tr. 259; *see also* Tr. 117, 189, 196, 198). The ALJ noted that Dr. Rengathary saw plaintiff and indicated "that the meningocele was asymptomatic prior to the fall and probably contributes little to the pain." (Tr. 21-22, citing, Tr. 325). The ALJ also considered Plaintiff's treatment history, noting that due to the "relatively small size of the lesion...surgical treatment was not indicated." (Tr. 21). Rather, the ALJ correctly observed that "[a]ll treatments have been conservative" and have included "symptomatic pain pills, muscle relaxants, etc." (Tr. 21). As the ALJ

13

2:10-cv-12778-BAF-MJH   Doc # 14   Filed 08/31/11   Pg 14 of 34   Pg ID 512

noted, plaintiff told her doctor that "her back pain is somewhat eased as she used her daughter's generic MiraLax packets for constipation and this has helped her feel a little more comfortable." (Tr. 22, citing, Tr. 318). Further, the ALJ considered the measures plaintiff used to relieve her pain. The ALJ noted that plaintiff "said she uses a 'massager' on her back as well as applying ointment," uses "pillows under both legs" for pain relief, and wears "a back brace almost everyday." (Tr. 20, citing, Tr. 369). In addition, the ALJ considered plaintiff's activities of daily living in determining her ability to perform work. He noted that the "[e]vidence in the record data includes the fact claimant is the sole provider of assistance to her children" (Tr. 17), as she testified that she lived alone with them. (Tr. 354). The ALJ noted that plaintiff was responsible for "getting the children ready for school classes. Claimant does transport her son to and from school, and at times shares transportation activity for the trip to and from school by 'car-pooling' with a neighbor." (Tr. 17, citing, Tr. 356-60). The ALJ also noted that plaintiff "testified that she cares for her own hygiene and basic needs." (Tr. 17, citing, Tr. 358). He further noted that plaintiff "does engage in tasks that include cooking an[d] laundry stating that she does receive some assistance for these tasks from her children." (Tr. 17 citing Tr. 364, 366-67). He observed that plaintiff "drives a motor vehicle and has a State of Michigan driver's license." (Tr. 13). Thus, the Commissioner asserts that the ALJ correctly did not identify

Report and Recommendation
Cross-Motions for Summary Judgment
*Miller v. Comm'r*; Case No. 10-12778

the need to further restrict plaintiff beyond the limitations set forth in his RFC finding.

The Commissioner also contends that remand is not warranted in this case because plaintiff has not satisfied the criteria for a sentence six remand. Of the evidence plaintiff submits, three reports are from the Michigan Department of Human Services (MDHS) dated February 10, 2009, February 13, 2009, and August 3, 2009. While this evidence is new, in that it was not available at the time of the ALJ's decision, according to the Commissioner, the additional evidence is not material given that both decisions post-date the ALJ's decision by almost two years. Consequently, this evidence is not material because it is not probative of plaintiff's condition at the time of the ALJ's decision. And, the Commissioner points out that there is no indication that the individuals who completed these forms ever saw plaintiff prior to the ALJ's decision. Notably, one physician who opined that plaintiff was "totally disabled" first saw her on August 3, 2009. (Dkt. 10-8, p. 3). Further, none of the evidence contained in these two exhibits purports to relate back any limitation to the time period considered by the ALJ. As plaintiff notes in her brief, the MDHS stated that plaintiff's condition was "deteriorating." Since plaintiff's condition had gotten worse, the appropriate remedy would be for her to file a new claim for benefits alleging an onset date consistent with the aggravation or deterioration of his condition. Finally, the Commissioner points

out that no physician completing these forms cited any objective findings to support the limitations set forth on the forms, other than plaintiff's subjective complaints.  Notably, the psychological report indicated that "psychological testing not done."  Thus, the Commissioner asserts that this evidence does not present a reasonable probability that the ALJ's decision would change.

## III.   DISCUSSION

### A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec.

Report and Recommendation
Cross-Motions for Summary Judgment
*Miller v. Comm'r*; Case No. 10-12778

Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B. <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

>           inability to engage in any substantial gainful activity by
>           reason of any medically determinable physical or mental
>           impairment which can be expected to result in death or
>           which has lasted or can be expected to last for a
>           continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R.

§ 416.905(a) (SSI).

   The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

>           Step One:  If the claimant is currently engaged in
>           substantial gainful activity, benefits are denied without
>           further analysis.
>
>           Step Two:  If the claimant does not have a severe
>           impairment or combination of impairments, that
>           "significantly limits ... physical or mental ability to do
>           basic work activities," benefits are denied without
>           further analysis.
>
>           Step Three:  If plaintiff is not performing substantial
>           gainful activity, has a severe impairment that is expected
>           to last for at least twelve months, and the severe
>           impairment meets or equals one of the impairments listed
>           in the regulations, the claimant is conclusively presumed
>           to be disabled regardless of age, education or work
>           experience.
>
>           Step Four:  If the claimant is able to perform his or her
>           past relevant work, benefits are denied without further
>           analysis.

> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,
20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner
makes a dispositive finding at any point in the five-step process, the review
terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence
and severity of limitations caused by her impairments and the fact that she is
precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited
with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step
without a finding that the claimant is not disabled, the burden transfers to the
Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).
At the fifth step, the Commissioner is required to show that "other jobs in
significant numbers exist in the national economy that [claimant] could perform
given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at
241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the
decision must be affirmed even if the court would have decided the matter
differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

      C.    <u>Analysis and Conclusions</u>

          1.    The Listings

The burden of proof for establishing that an impairment meets or equals the

requirements of a listed impairment rests with the claimant.  *See Foster v. Halter*,

279 F.3d 348, 354 (6th Cir. 2001).  To meet a listed impairment, a claimant must

satisfy all of the criteria in the listing.  *See Roby v. Comm'r of Soc. Sec.*, 48 Fed.

Appx. 532, 536 (6th Cir. 2002), citing, *Hale v. Secretary of Health & Human

Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987).  "If all the requirements of the listing

are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*,

34 Fed.Appx. 202, 203 (6th Cir. 2002).  "An impairment that manifests only some

of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*,

493 U.S. 521, 530 (1990).  "It is insufficient that a claimant comes close to

satisfying the requirements of a listed impairment." *Elam ex rel. Golay v.

Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003).

Plaintiff asserts that she has satisfied Listing 1.04, subsection A.[2]  Listing

1.04 provides the following:

---

    [2] Plaintiff does not appear to claim that she has satisfied subsection B
(spinal arachnoiditis) or subsection C (lumbar spinal stenosis).

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including cauda equina) of the spinal cord.  With:

    A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine);

Plaintiff has made multiple references that the pain radiates from her back down to her lower extremities, which, according to plaintiff, is symptomatic of nerve root compression.  However, none of the medical records expressly state that plaintiff suffers from nerve root compression.  An implication, based on radiating pain, is not enough to satisfy the Listing.  *See e.g.*, *Steagall v. Comm'r of Soc. Sec.*, 2009 WL 806634 (S.D. Ohio 2009) (Treating physician's opinion that plaintiff met the Listing for chronic radiculopathy was insufficient to satisfy the listing where medical records stated that there was no nerve root compression.).  Plaintiff also does not point to any positive straight leg raising tests in both the sitting and supine positions.  Absent such results, plaintiff cannot meet the Listing.  *See e.g.*, *Ayende v. Astrue*, 2009 WL 537221, *7 (E.D. Tenn. 2009) (Negative straight leg testing results meant that the plaintiff failed to satisfy Listing 1.04).  Moreover, while plaintiff points to evidence in the record showing that she had "muscle

weakness," she points to no evidence showing "motor loss," demonstrated by atrophy associated with muscle weakness, which is required by the Listing. *See e.g.*, *Waits v. Astrue*, 2008 WL 4276547, *10 (S.D. Ohio 2008). Thus, the undersigned agrees with the Commissioner that plaintiff failed to meet her burden of proof and there is no basis to disturb the ALJ's findings.

In order to meet either listing 12.04 or listing 12.06, plaintiff must show that she satisfies the criteria in both Paragraphs A and B of those listings. 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04, 12.06. The A criteria consist of clinical findings which medically substantiate a mental disorder. To satisfy the B requirements of Listings 12.04 and 12 .06, plaintiff has to establish at least two of the following limitations: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id*. Alternatively, under listing 12.04 or 12.06, a claimant may satisfy the requirements of a listed mental impairment if she has a medically substantiated mental impairment and functional limitations that meet the "C" criteria of the listing. The "C" criteria for listing 12.04 requires a medically documented history of a mental impairment and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease that has resulted in such marginal adjustment that even minimal increase in

mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement with a need for such an arrangement to continue. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04. For listing 12.06, the "C" criteria is met if the mental impairment resulted in the "complete inability to function independently outside the area of one's home." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.06. Plaintiff does not argue that she satisfies the "C" criteria.

Assuming that she satisfies the "A" criteria, plaintiff's argument and supporting record references are woefully inadequate. According to plaintiff, she meets the B criteria because she has marked restriction of her activities of daily living. Plaintiff does not cite any medical evidence to support this conclusion. Rather, she points to her difficulties with combing her hair and showering as often due to physical limitations, and her reliance on her children, chore provider and family to take care of her cooking and cleaning. While plaintiff claims that she also has marked restrictions with her ability to concentrate and keep pace as she is often drowsy due to her medications, she then points to her "moderate difficulty in this area as noted in her psychiatric evaluation." (Tr. 253, 363). Plaintiff also points out that she has been diagnosed multiple times throughout the record with anxiety and post traumatic stress disorder. (Tr. 233, 238, 272-78). When asked

why she was diagnosed with anxiety by the ALJ, plaintiff responded it was due to sexual abuse she received as a child.  (Tr. 347).  Thus, according to plaintiff, her impairments meet the requirements of 12.06.  Plaintiff asserts that she meets the requirements of 12.06(A) as she has been diagnosed with post traumatic stress disorder.  The undersigned finds plaintiff's analysis to be inadequate.  She merely points to the conditions from which she suffers, rather explaining how the medical evidences shows that she satisfies the Listings.  This is merely a repetition of whether she satisfies the "A" criteria and in no way addresses the "B" criteria required by both Listings.  Thus, the undersigned finds no basis to disturb the ALJ's findings.

Similarly, to show that she equals a listed impairment, plaintiff must "present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531.  It is not enough for plaintiff to show that the overall functional impact of his impairment is as severe as that of an impairment in the Listings.  *Id*.  Again, plaintiff fails to explain how the medical evidence shows that she medically equals either Listing and the undersigned finds no reason to disturb the ALJ's findings.

2.    Evaluation of plaintiff's pain complaints

As to plaintiff's claim that the ALJ failed to properly credit how limiting her pain was, the undersigned concludes that the ALJ's decision that plaintiff's pain

complaints were not fully credible is supported by substantial evidence.  As both parties acknowledge, subjective allegations of disabling pain cannot alone support a finding of disability.  20 C.F.R. § 404.1529(a).  Rather, the presence of an underlying medical condition, which could produce disabling symptoms, satisfies the first prong of the Sixth Circuit standard for evaluating subjective complaints. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). To satisfy the second prong of the test, and prove that her subjective complaints are disabling, plaintiff must present objective medical evidence confirming the severity of the alleged symptoms, or show that the medical condition is of such severity that it could reasonably be expected to produce disabling symptoms. *Duncan*, 801 F.2d at 853.  Where, as here, plaintiff's alleged or reported symptoms were found to exceed the expected level of pain and/or dysfunction, the ALJ properly considered other factors relating to the subjective complaints as set forth in 20 C.F.R. § 404.1529 and SSR 96-7p.  SSR 96-7p provides, in part that the adjudicator in addition to the objective medical evidence, must consider the following when assessing the credibility of an individual's statements:  (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5) treatment, other than medication, the individual receives or has received for

relief of pain or other symptoms; (6) any measures other than treatment the

individual uses or has used to relieve pain or other symptoms (e.g., lying flat on

his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board);

and (7) any other factors concerning the individual's functional limitations and

restrictions due to pain or other symptoms.  The adjudicator must then evaluate all

of this information and draw appropriate inferences and conclusions about the

credibility of the individual's statements.  *Id.*

In the view of the undersigned, the ALJ properly considered the objective

medical evidence, including the medical source opinions of record, in evaluating

plaintiff's pain complaints and credibility.  The ALJ observed that "MRI of the

cervical spines as of 04/03/02 was normal and the two sets of MRI of the LS

spines in 2001 and again in 07/2005 were normal."  (Tr. 21 citing Tr. 259; *see also*

Tr. 117, 189, 196, 198).  The ALJ noted that Dr. Rengathary saw plaintiff and

indicated "that the meningocele was asymptomatic prior to the fall and probably

contributes little to the pain."  (Tr. 21-22, citing, Tr. 325).  The ALJ also

considered plaintiff's treatment history, noting that due to the "relatively small

size of the lesion ... surgical treatment was not indicated."  (Tr. 21).  Rather, the

ALJ correctly observed that "[a]ll treatments have been conservative" and have

included "symptomatic pain pills, muscle relaxants, etc."  (Tr. 21).

The ALJ also considered the measures plaintiff used to relieve her pain. The ALJ noted that plaintiff "said she uses a 'massager' on her back as well as applying ointment," uses "pillows under both legs" for pain relief, and wears "a back brace almost everyday." (Tr. 20, citing, Tr. 369). In addition, the ALJ considered plaintiff's activities of daily living in determining her ability to perform work. He noted that the "[e]vidence in the record data includes the fact claimant is the sole provider of assistance to her children" (Tr. 17), as she testified that she lived alone with them. (Tr. 354). The ALJ noted that plaintiff was responsible for "getting the children ready for school classes. Claimant does transport her son to and from school, and at times shares transportation activity for the trip to and from school by 'car-pooling' with a neighbor." (Tr. 17, citing, Tr. 356-60). The ALJ also noted that plaintiff "testified that she cares for her own hygiene and basic needs." (Tr. 17, citing, Tr. 358). He further noted that plaintiff "does engage in tasks that include cooking an[d] laundry stating that she does receive some assistance for these tasks from her children." (Tr. 17 citing Tr. 364, 366-67). He observed that plaintiff "drives a motor vehicle and has a State of Michigan driver's license." (Tr. 13). In the view of the undersigned, the ALJ constructed an extraordinarily limited RFC for plaintiff, accommodating all of her limitations as documented in the record:

> I find from the totality of the credible evidence that

claimant has the "residual functional capacity" (1) to lift and/or carry weights occasionally and frequently, during the working period, up to five pounds of weight; (2) standing and/or walking abilities in the work place, assuming normal periods of breaks, for a total of up to at least two hours during a normal eight hour work period; (3) with Sitting for periods of time upwards of six hours when performing work activity; (4) not requiring frequent periods of bending from the waist or knees; (5) not involving extremes of cold, heat, wetness and/or humidity; (6) can communicate in the English language and has the basic mental abilities' to understand, carry out and remember simple unskilled work instructions; (7) has the mental functional ability to respond appropriately to supervision when performing unskilled work activity; (8) has the mental functional abilities to respond appropriately to usual work situations and with co-workers when performing unskilled work activity; (9) has the mental functional abilities in dealing with changes in a routine unskilled work setting; and (10) eliminate situations in the work setting of hazards from unprotected areas of moving machinery, heights, ramps; ladders, scaffolding, and on the ground level unprotected regions of holes and pits.

(Tr. at 19). Thus, the ALJ correctly did not identify the need to further restrict plaintiff beyond the limitations set forth in his RFC finding.

### 3.    Sentence six remand

Under sentence six of 42 U.S.C. § 405(g), plaintiff has the burden to demonstrate that this evidence is "new" and "material" and that there is "good cause" for failing to present this evidence in the prior proceeding. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006); *Longworth v. Comm'r of*

*Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005).  Courts "are not free to dispense with these statutory requirements."  *Hollon*, 447 F.3d at 486.  "Good cause" is *not* established solely because the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a "harder line" on the good cause test.  *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Perkins v. Apfel*, 14 Fed.Appx. 593, 598-99 (6th Cir. 2001).  A plaintiff attempting to introduce new evidence must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision.  *See Hollon*, 447 F.3d at 485; *see also Brace v. Comm'r*, 97 Fed.Appx. 589, 592 (6th Cir. 2004) (claimant's decision to wait and schedule tests just before the hearing with the ALJ did not establish good cause); *Cranfield v. Comm'r*, 79 Fed.Appx. 852, 859 (6th Cir. 2003).

Plaintiff asserts that she has established good cause as the records are a result of continued medical treatment and a requirement of the State of Michigan Department of Health and Human Services.  Plaintiff merely argues, which has been found insufficient to establish "good cause" by the Sixth Circuit, that the records post-date the hearing.  Plaintiff does not even attempt to establish "good cause" as that test has been explained by the Sixth Circuit and thus, the undersigned concludes that a remand is not appropriate for this reason.

Additionally, in order to establish materiality, plaintiff must show that the

introduction of the new evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *Foster v. Halter*, 279 F.3d at 357; *Sizemore v. Sec. of HHS.*, 865 F.2d 709, 711 (6th Cir. 1988); *Hensley v. Comm'r of Soc. Sec.*, 214 Fed.Appx. 547, 550 (6th Cir. 2007). The Commissioner correctly acknowledges that the post-hearing evidence may have documented the worsening of plaintiff's impairments, but the undersigned concludes that the evidence of the aggravation or deterioration of a condition is not relevant because it "does not demonstrate the point in time that the disability itself began." *Sizemore v. Sec'y of Health & Human Serv's.*, 865 F.2d 709, 712 (6th Cir. 1988). Moreover, the new evidence is not from long-term treating physicians, who present a longitudinal view of plaintiff's condition and the evidence post-dates the hearing by nearly two years. Thus, the new evidence is not material to plaintiff's condition during the time period adjudicated by the ALJ.

E.   Conclusion

After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 31, 2011                    s/Michael Hluchaniuk
                                         Michael Hluchaniuk
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

        I certify that on August 31, 2011 I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: S. Christopher Hunter, Susan K. DeClercq, AUSA,
and the Commissioner of Social Security.

                                         s/Darlene Chubb
                                         Judicial Assistant
                                         (810) 341-7850
                                         darlene_chubb@mied.uscourts.gov